**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **LOUISE BAYLISS, BY AND THROUGH HER HUSBAND AND NEXT FRIEND, STEVEN BAYLISS, ET AL.,** | : : : : | Case No.  1:16-cv-594<br><br>Judge |
| Plaintiffs | : : | |
| v. | : : | |
| **ABUBAKAR ATIQ DURRANI, M.D., ET AL.,** | : : : | **NOTICE OF REMOVAL** |
| Defendants. | : : : | |

_____

Defendants West Chester Hospital, LLC, and UC Health (collectively, "Defendants") hereby remove to this Court the state court action described below. Removal is warranted under 28 U.S.C. § 1332(d)(11) and 28 U.S.C. § 1331. In support of removal, Defendants state as follows:

## BACKGROUND

On May 2, 2016, Plaintiffs Louise Bayliss (by and through her husband and next friend, Steven Bayliss), Kevin and Hillary Hartness, Carolyn and William Hursong, Christopher McCaughey (as the administrator of the Estate of Sarah Juergens), Linda Kallmeyer-Ward, Katelyn Kauffman, Amanda Koch, Ruvimbo Nyemba, Ronald Rowley, and Billy Spivy (collectively, "Plaintiffs"), commenced this action by filing a complaint in the Court of Common Pleas of Hamilton County, in the State of Ohio, bearing case number A1602538 ("Complaint") (attached hereto as **Exhibit A**). Plaintiffs allege that Dr. Abubakar Atiq Durrani ("Dr. Durrani"), while under suspension, performed and/or assisted in the performance of unnecessary surgeries on Plaintiffs that resulted in complications and injuries. Compl. ¶¶ 6-9; 25-273; 342-50.

Plaintiffs also bring claims against Defendants West Chester Hospital and UC Health for negligence, negligent credentialing, supervision, and retention, fraud, spoliation of evidence, violations of the Ohio Consumer Sales Practices Act, and state RICO claims. Compl. ¶¶ 774-824; 920-942. Plaintiffs previously filed individual lawsuits against Defendants in the Butler County Court of Common Pleas. *See* Compl., *Steven Bayliss, Executor for the Estate of Louise Bayliss v. Abubakar Atiq Durrani, et al.*, Butler County Common Pleas Case No. CV 2014 07 1944 (attached hereto as **Exhibit B**). Those suits were later voluntarily dismissed pursuant to Ohio R. Civ. P. 41(A) before being re-filed in Hamilton County. *See* Notice of Dismissal, *Steven Bayliss, Executor for the Estate of Louise Bayliss v. Abubakar Atiq Durrani, et al.*, Butler County Common Pleas Case No. CV 2014 07 1944 (attached hereto as **Exhibit C**).

This case, which consolidates ten previously filed individual suits, is one of hundreds of nearly identical suits against the Defendants. Some of these cases were filed in Hamilton County, and some were originally filed in Butler County. Plaintiffs have denominated their re-filed cases as a "Dr. Durrani Case," causing them to be assigned to Hamilton County Common Pleas Judge Robert Ruehlman. On December 7, 2015, in preparation for a December 14 case management conference regarding all of the Hamilton County cases (including those re-filed after being dismissed in Butler County), Plaintiffs' counsel submitted to Judge Ruehlman a lengthy "binder," which included, among other things, a number of motions, descriptions of Plaintiffs' counsel's positions on various pre-trial issues, and lists of cases currently pending or which were to be filed. *See* Plaintiffs' Binder for December 14, 2015 Case Management Conference ("Binder") (attached hereto as **Exhibit D**). In all, Plaintiffs' counsel claimed to represent Plaintiffs in some 520 individual cases as part of this litigation, including 172 already filed in Hamilton County, 258 that Plaintiffs' counsel planned to dismiss in Butler County and re-file in

Hamilton County, and 40 more Butler County cases that were the subject of a pending motion to transfer to Hamilton County as of December 7.[1] *Id.*, pp. 8, 19-29, 209-23, 226-235.

In the Binder, Plaintiffs unambiguously requested that Judge Ruehlman set "ALL" of these cases for one single, combined trial or, at a minimum, several smaller group trials. *See, e.g.*, Binder, p. 179-80 (listing "[o]ne scheduled trial for ALL cases [to begin] August 1, 2016" as Plaintiffs' top choice in a list of their "Preferences in Order of Preference for Trial Settings"); *id.*, p. 180 (listing "Group Trials with Many Options" as Plaintiffs' second choice); *id.*, p. 126 (stating that "[t]he Court has many options [for setting trial dates, including] [s]chedul[ing] one trial. . . . [or] [s]et[ting] trials by groups . . . ."); *id.*, pp. 153-177 (attaching and citing *Suida v. Howard*, Nos. C-000656, C-000687, 2002 WL 946188 (Ohio Ct. App. May 10, 2002) for the proposition that "group trials [are] allowed]"). Here, every Plaintiff listed in this Complaint was explicitly referenced and included in the Binder as part of the Plaintiffs' joint trial proposal. *See* Binder, pp. 181-99, 209-23.

Although Judge Ruehlman did not grant Plaintiffs' request for a single trial, in a December 15, 2015 order, the court scheduled several trials as follows:

1) **February 29, 2016**: trial in *Mike & Amber Sand v. Abubakar Atiq Durrani, et al.*, Hamilton County Common Pleas Case No. A 1506694;

2) **March 14, 2016**: trial in *Steven Andrew Schultz v. Abubakar Atiq Durrani, et al.*, Hamilton County Common Pleas Case No. A 1506861;

3) **May 2, 2016**: trial in 14 cases involving Cincinnati Children's Hospital Medical Center;

4) **August 1, 2016**: trial in 24 cases involving "West Chester/UC Health and any hospital named as a Defendant in the C1C2/False Pannus cases";

5) **January 2, 2017**: a "massive group trial" in "all remaining Dr. Durrani cases," which "could take six months to a year."

---

[1] This motion was later denied.

General Order on all Dr. Durrani Hamilton County Cases for Case Management Conference December 14, 2015, Hamilton County Common Pleas Case No. A1506577 ("General Order") (attached hereto as **Exhibit E**), pp. 11-15.

By proposing a joint trial of the claims of over 100 plaintiffs, Plaintiffs created a "mass action," as defined in 28 U.S.C. § 1332(d)(11), making this case (and the hundreds of others covered by the proposal) removable. This case is also removable because it implicates a substantial federal question regarding the regulatory requirements for PureGen and BMP-2. Accordingly, this Court has jurisdiction.

## THIS CASE IS REMOVABLE AS PART OF A MASS ACTION

This case is removable as part of a mass action, pursuant to the mass action provisions of the diversity jurisdiction statute, 28 U.S.C. § 1332(d)(11). A removable mass action meets the following requirements:

a. It involves the monetary relief claims of 100 or more persons that are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, *see id.* § 1332(d)(11)(B)(i);

b. The aggregate amount in controversy exceeds $5,000,000 and the claims of the individual plaintiffs exceed $75,000, *see id.* §§ 1332(a), (d)(2), (d)(11)(B)(i); and

c. Any plaintiff is a citizen of a State different from any defendant, *see id.* § 1332(d)(2)(A).

These requirements are satisfied here.

**A.** **The Plaintiffs' Binder in the Hamilton County Action Proposed a Joint Trial of the Claims of 100 or More Persons**

This case is removable as part of a mass action. In the Binder submitted to Judge Ruehlman, Plaintiffs' counsel explicitly proposed that this case be tried jointly with hundreds of other cases. *See* 28 U.S.C. § 1332(d)(11)(B)(i); Binder, pp. 181-99, 209-23. Plaintiffs' counsel based this request on its belief that these cases involve common questions of law or fact. *See* 28 U.S.C. § 1332(d)(11)(B)(i); Binder, p. 179-80 (listing factors that all of the cases proposed to be tried jointly "have in common"); *id.*, p. 186 ("The claims against the hospital Defendants are the same in each case. It's silly to try the same fact issue against the hospital to 500 juries."); *id.*, p. 187 (listing factors "common to all cases"). Thus, the first mass action requirement is satisfied.

This element is met even though this case has just ten plaintiffs (in fact, most of the cases that were proposed to be tried jointly have just one plaintiff). The Sixth Circuit will address this issue in a pending appeal. (*See* Doc. 38-1, *In re Abubakar Aitq Durrani, M.D., et al.*, 6th Cir. No. 16-0304 (attached as **Exhibit F**).) However, the Seventh, Eighth, and Ninth Circuits have explicitly approved mass action removal of individual actions where each includes fewer than 100 plaintiffs, but the actions are proposed to be tried jointly and, combined, involve at least 100 plaintiffs. *See Corber v. Xanodyne Pharm., Inc.*, 771 F.3d 1218, 1220 (9th Cir. 2014) (removal proper in mass action consisting of several cases, each of which had fewer than 100 plaintiffs but had "far more than 100 plaintiffs when considered together"); *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1161-62 (8th Cir. 2013) (removal proper in mass action consisting of three suits, each involving fewer than 100 plaintiffs, even though each case involved fewer than 100 plaintiffs); *In re Abbott Labs., Inc.*, 698 F.3d 568, 570-71 (7th Cir. 2012) (removal proper in mass action consisting of ten cases with fewer than 100 plaintiffs each, where, combined, the cases involved several hundred plaintiffs).

Further, removal is proper over all cases that Plaintiffs proposed be tried jointly, including those that are not part of the "massive group trial" set for January 2, 2017. The relevant inquiry is whether Plaintiffs *proposed* a joint trial of the claims of 100 or more plaintiffs, *not* whether the claims of 100 or more plaintiffs are actually adjudicated together in a single trial. As the Seventh Circuit has noted:

> A proposal to hold multiple trials in a single suit (say, 72 plaintiffs at a time, or just one trial with 10 plaintiffs and the use of preclusion to cover everyone else) does not take the suit outside § 1332(d)(11). Recall the language of § 1332(d)(11)(B)(i): any "civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly" is treated as a "class action". . . . *The question is not whether 100 or more plaintiffs answer a roll call in court, but whether the "claims" advanced by 100 or more persons are proposed to be tried jointly.*

*Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (emphasis added); *see also Atwell*, 740 F.3d at 1163 (approving of *Bullard* and noting that "construing the statute to require a single trial of more than 100 claims would render 28 U.S.C. § 1332(d)(11) 'defunct'"); *In re Abbott*, 698 F.3d at 573 ("[I]t does not matter whether a trial covering 100 or more plaintiffs actually ensues; the statutory question is whether one has been proposed." (quoting *Bullard*, 535 F.3d at 762)). Thus, the fact that that Judge Ruehlman scheduled two individual trials as well as two group trials for 14 and 24 plaintiffs is irrelevant. Plaintiffs' *proposal*, standing alone, satisfies the first requirement of mass action removal as to each and every case included in that proposal.

## B.    The Amount in Controversy Is Satisfied

Both the individual $75,000 and aggregate $5,000,000 amount in controversy requirements for mass action removal are satisfied. *See* 28 U.S.C. §§ 1332(a), (d)(2), (d)(11)(B)(i). It is apparent from the face of Plaintiffs' Complaint and the serious nature of the

"catastrophic injuries" alleged by Plaintiffs, *see* Compl. Prayer for Relief, ¶¶ 1-17, that the amount in controversy exceeds $75,000 for these Plaintiffs, individually; *Pierce v. Durrani*, Judgment Entry, Hamilton Cty., Ohio Common Pleas Case No. A1200265 (Feb. 19, 2014) (companion case involving only defendants Abubakar Durrani, M.D. and CAST) (attached hereto as **Exhibit G**). Where, as here, plaintiffs allege serious bodily injuries, courts have readily found that the amount-in-controversy requirement is satisfied. *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001); *see, e.g.*, *Smith v. Wyeth, Inc.*, 488 F. Supp. 2d 625, 630-31 (W.D. Ky. 2007); *accord Copley v. Wyeth, Inc.*, No. 09-722, 2009 WL 1089663, at *2 (E.D. Pa. Apr. 22, 2009). This is especially true, where, as here, there is a demand for punitive damages. *See* Compl., Prayer for Relief, ¶ 11; *Smith v. Nationwide Property and Cas. Ins. Co.*, 505 F.3d 401, 408 (6th Cir. 2007) ("As a general rule, [amount-in-controversy] analysis must also take into account the ability of [plaintiffs] to recover punitive damages, unless it is apparent to a legal certainty that such cannot be recovered."). Because Plaintiffs' claims exceed $75,000, the aggregate amount in controversy, which embraces the claims of the more than 500 individuals who proposed to have their claims tried jointly (and whose claims also exceed $75,000 each), easily exceeds $5,000,000. Accordingly, the amount-in-controversy requirement is satisfied.

## C.     The Diversity Requirement Is Satisfied

The diversity requirement for mass action removal is also met. *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(11)(A). For removal of a mass action, only "minimal diversity" is required, *i.e.*, at least one plaintiff must be diverse from one defendant. *See id.* Here, at least one Defendant, West Chester Hospital, is a citizen of Ohio for purposes of diversity, and at least one Plaintiff, Steven Andrew Schultz, is a citizen of Indiana. *See Schultz v. Durrani, et al.*,

Complaint, Hamilton County Common Pleas Case No. A1506861, Complaint, December 16, 2015 (attached hereto as **Exhibit H).** Therefore, all the jurisdictional requirements of mass action removal are met.

<u>THIS CASE IS REMOVABLE UNDER SUBSTANTIAL FEDERAL QUESTION</u>
<u>JURISDICTION</u>

This action is also removable under 28 U.S.C. § 1331 as involving a substantial federal question. "The substantial-federal-question doctrine [has] three parts: (1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Nayyar v. Mt. Carmel Health Sys.*, No. 2:12cv189, 2012 WL 3929830, at *2 (S.D. Ohio Sept. 10, 2012) (citing *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007) (en banc)). This means, in other words, that a state-law cause of action may arise under federal law where "the vindication of a right under state law depends on the validity, construction, or effect of federal law." *Mikulski*, 501 F.3d at 565; *see also Merrell Dow*, 478 U.S. at 808 (quotation omitted). The requirements are satisfied here.

A.      **The State-law Claims Necessarily Raise a Disputed Federal Issue**

Plaintiffs' claims for negligence, negligent credentialing, supervision, and retention, and fraud necessarily raise a disputed federal question. This Court's decision in *H.R. ex rel. Reuter v. Medtronic, Inc.* is illustrative. 996 F.Supp.2d 671, 680 (S.D. Ohio 2014). There, in a similar case involving state law claims in a suit concerning Dr. Durrani and Medtronic, the court noted that "[w]hile this case does not involve an agency's compliance with a federal statute, it does present important federal questions about federal regulation of Class–III medical devices." *Id.* The Court explained that because it would "be required to decide as a threshold question whether

8

defendants violated federal law" the case "present[ed] a substantial federal question." *Id.* (citing *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, No. 12–C–154, 2012 WL 1424731, at \*5 (E.D. Wis. 2012) (substantial federal question existed where, "[a]lthough the elements of the claims asserted by the plaintiffs are governed by state law, the threshold issues that will determine liability require the interpretation of federal statutes and regulations")); *see also Jenkins v. Medtronic, Inc.,* 984 F.Supp.2d 873, 878 (W.D. Tenn. 2013) ("Plaintiffs' claims undoubtedly require this Court to examine federal law, and, even more specifically, examine federal requirements imposed by the FDA through the premarket approval process. Therefore, the Court finds Plaintiffs' claims would be more suitably decided by federal question jurisdiction under the substantial-federal-question doctrine.").

The same reasoning applies here. At the heart of the Complaint are allegations that Dr. Durrani used BMP-2 and PureGen. Compl. ¶¶ 580-602; 603-706. BMP-2 is a bone morphogenic protein, used as an artificial substitute for bone grafting in spine surgeries, yet it is not approved by the FDA for certain spine surgeries. Compl. ¶¶ 584-85, 587. PureGen is harvested from living human beings under the Stem Cell Collection program, in violation of FDA regulations. Compl. ¶¶ 603-04. PureGen is alleged to be both a biologic and a drug, regulated by the FDA. Compl. ¶¶ 604, 641. The Complaint additionally alleges that Dr. Durrani violated the Anti-Kickback Statute, 42 U.S.C. § 1320, and Stark Law, 42 U.S.C. § 1395, through his involvement with PureGen developers and distributors, and that he violated FDA Investigation New Drug consent rules regarding the use of PureGen. Compl. ¶¶ 657, 662. Although Plaintiffs' causes of action sound in state law, the supposed violations of federal law and regulatory regimes are threshold questions in the case. Dr. Durrani's alleged malpractice and the hospitals' alleged negligence

turn on the uses, misuses, and informed consent procedures established by the FDA and associated laws.

Plaintiffs' allegations related to federal law include:

- That Defendants knowingly used BMP-2 "in a manner not approved by the FDA." Compl. ¶ 591-92.

- That Defendants improperly used BMP-2 and BMP-2 required equipment, and failed to obtain patient consent in BMP-2 procedures. Compl. ¶¶ 592-602.

- There was no valid FDA license to use PureGen. Compl. ¶ 621.

- PureGen was not the subject of a federal IND application or a valid biologics license so its use was improper. Compl. ¶¶ 621, 624, 673.

- "Defendants would purchase and allow these doctors to use a substance not approved by the FDA in patients without their informed consent." Compl. ¶ 656.

- "Implanting PureGen in any part of the spinal canal without FDA clearance, proper trials, and patient consent is reckless battery and violates the Hippocratic Oath[.]" Compl. ¶ 677.

- Plaintiffs claim that the majority of the surgeries occurred after FDA inspection and warnings about the non-FDA approved status of PureGen. Compl. ¶¶ 660, 670, 675-77.

- Plaintiffs also allege Defendants violated R.C. 3715.65(A) which states: "No person shall sell, deliver, offer for sale, hold for sale, or give away any new drug unless an application with respect to the drug has become effective under section 505 of the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1040 (1938), 21 U.S.C.A. 301." Compl. ¶ 642.

- Plaintiffs also allege Defendants "did not disclose their intent to use PureGen, nor did they inform Plaintiffs that it was a product that was not approved by the FDA for human use," and that PureGen was actually used "in manners not approved by the FDA." Compl. ¶¶ 700-01.

The allegations form the basis of all Plaintiffs' claims, and demonstrate the presence of a disputed federal issue: whether or not BMP-2 and PureGen were used in violation of FDA regulations. Indeed, in Count III, Plaintiffs allege fraud based on a violation of FDA regulations, stating: "West Chester Hospital/UC Health also either concealed from Plaintiffs facts they knew about Dr. Durrani, including that Infuse/BMP-2 or PureGen would be used in Plaintiffs' surgery, or misrepresented to Plaintiffs the nature of the surgery, and the particular risks that were

involved therein." Compl. ¶ 790. This conduct is also the basis of the negligence and Ohio

Consumer Sales Protection Act, both of which require inappropriate and improper uses of

PureGen, and the Defendants' representations contrary to the FDA concerning Dr. Durrani and

the use of PureGen, respectively. Similarly, in Count II, Plaintiffs directly tie their claim for

negligent credentialing, supervision, and retention of Dr. Durrani to a violation of federal law:

> The Safe Medical Device Act required entities such as West
> Chester Hospital/UC Health to report serious injuries, serious
> illnesses, and deaths related to failed medical devices to the FDA
> and the manufacturer; this was never done. As a direct and
> proximate result of the negligent credentialing supervision, and
> retention of Dr. Durrani, Plaintiff sustained all damages requested
> in the prayer for relief. Compl. ¶¶ 781-82.

It follows that without an initial determination that Dr. Durrani's use of BMP-2 and PureGen is

contrary to the FDA regulations, there can be no negligence or even fraud by Dr. Durrani and the

hospitals, and therefore no knowledge of illegal practices by the Defendants. Accordingly,

because Plaintiffs cannot prevail unless they prove a violation of federal law; Plaintiffs' claims

raise a disputed federal issue. *See Medtronic,* 996 F. Supp. 2d at 679.

## B.      The Federal Interest is Substantial

The federal interest at issue in this case is also substantial. The Supreme Court has

identified four aspects of a case or an issue that affect the substantiality of the federal interest: (1)

whether the case includes a federal agency, and particularly, whether that agency's compliance

with the federal statute is in dispute; (2) whether the federal question is important (*i.e.*, not

trivial); (3) whether a decision on the federal question will resolve the case (*i.e.*, the federal

question is not merely incidental to the outcome); and (4) whether a decision as to the federal

question will control numerous other cases (*i.e.*, the issue is not anomalous or isolated). *Id.* at

679-80 (citing *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007)). Like the

*Medtronic* case, this case does not involve an agency's compliance with federal statute, but it

does present "important federal questions about the federal regulation of … medical devices." *Id.* at 680. Here, as in *Medtronic*, resolution of the federal issues will control other cases. *See, e.g., Wilder, et al. v. Buchanon, et. al.*, Butler County Comm. Pl., No. 2015051278, May 29, 2015. If it is clear that the federal issue presented "is not anomalous or isolated," but likely to be present in other cases, the issue raises a substantial federal interest. *Id.* And that is the case here.

## C. The Exercise of Jurisdiction Would Not Disturb any Congressionally Approved Balance of Federal and State Judicial Responsibilities

This Court's exercise of jurisdiction also would not disturb any approved balance of federal and state responsibilities. There is no bright-line rule in determining the presence of a federal issue because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Medtronic*, 996 F. Supp. 2d at 681. The relevant inquiry is whether there is reason to think Congress would prefer "that the federal questions presented here be resolved by state courts." *Id.* (citing *State of Michigan v. Bay Mills Indian Cmty.*, 695 F.3d 406, 413 (6th Cir. 2012)). Where Congress has "imposed a regime of detailed federal oversight it would be nonsensical to prevent such claims to be removed to a federal forum." *Id.* (internal quotation marks omitted).

This case deals with questions of federal oversight under the FDA, and specifically, the PMA. Under the PMA, Congress has set forth a regulatory plan for the Pre-Market Approval of Medical Devices and the proper uses of those devices. Accordingly, Congress has imposed federal oversight of this area and resolution in a federal forum will not upset a balance of federal and state responsibilities. Quite the opposite: the exercise of federal jurisdiction here will reinforce that balance by placing a substantial federal issue in the federal courts. Because all of the elements are satisfied, this Court should exercise substantial federal question jurisdiction over the case.

## ALL REMOVAL PROCEDURES ARE SATISFIED

Plaintiffs submitted to Judge Ruehlman the Binder proposing a joint trial of the claims of more than 100 Plaintiffs, including these Plaintiffs, on December 7, 2015. They e-mailed a copy of the Binder to Defendants on that same date. This Complaint was filed on May 2, 2016 and Defendants were served on May 5, 2016. Accordingly, this removal is timely, since it occurred "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it [could] first be ascertained that the case is one which is or has become removable." *See* 28 U.S.C. § 1446(b)(3); *see also* 28 U.S.C. § 1446(b)(1) (requiring notice of removal to be filed within 30 days of receiving "a copy of the initial pleading setting forth the claim of relief").

Both Defendants that have been properly served consent to and join in this removal with respect to federal question jurisdiction. Consent to removal is not required under CAFA. *See id.* §§ 1332(d)(11), 1453(b), 1446(b)(2)(A). *See* Return of Service for UC Health & West Chester Hospital, LLC, *Steven Bayliss, Executor for the Estate of Louise Bayliss v. Abubakar Atiq Durrani, et al.*, Hamilton County Common Pleas Case No. A1602538 (attached hereto as **Exhibit I**).

With respect to mass action jurisdiction, removal is not barred by the Ohio citizenship of any Defendants. *See id.* § 1453(b).

Copies of all process, pleadings, and orders served upon Defendants are attached hereto as **Exhibit J**. *See id.* § 1446(a).

Written notice of this removal is being provided to all adverse parties and is being filed with the clerk of the Hamilton County Court of Common Pleas. *See id.* § 1446(d).

Defendants hereby reserve their right to amend this notice of removal.

**WHEREFORE**, Defendants respectfully remove this action from the Common Pleas Court of Hamilton County, in the State of Ohio, to this Court.

Respectfully submitted,

/s/ Russell S. Sayre
Russell S. Sayre (0047125)
John B. Nalbandian (0073033)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Phone: (513) 381-2838
Fax: (513) 381-0205
sayre@taftlaw.com
nalbandian@taftlaw.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically on May 31, 2016. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.  A copy will also be served via electronic mail to the following:

Matthew J. Hammer (0092483)
Lindsay Boese (0091307)
THE DETERS LAW FIRM
5247 Madison Pike
Independence, KY 41051
Phone: (513) 729-1999
Fax: (513) 381-4084
mhammer@ericdeters.com

/s/ Russell S. Sayre

16265298.1

15